**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**MICHAEL J. FOX FOUNDATION FOR PARKINSON'S RESEARCH**
**90 Broad Street 10th Floor**
**New York, NY 10004**

**Plaintiff,**

**-v-** **Civil Action No.________________**

**LINDA M. SPRINGER**
**in her official capacity as**
**Director of the United States Office of Personnel Management**
**1900 E Street, N.W.**
**Washington, D.C. 20415-0001,**

**Defendant.**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## I. STATEMENT OF FACTS

### A. The Combined Federal Campaign

The Combined Federal Campaign ("CFC") was established by President Kennedy in 1961 as the exclusive means for federal employees[1] to make charitable contributions at their places of work. See 5 CFR § 950.102 (a); *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988). In 2005, federal civilian and postal employees and military personnel were provided the opportunity to contribute to the charities of their choice. Federal employees and military personnel donated approximately $268.5 million to the

[1] Armed forces personnel and Postal Service employees as well as civil servants participate in the CFC, which is conducted annually.

2005 CFC.  See OPM News Release, April 21, 2006.

     The Director of the Office of Personnel Management ("Director") supervises the CFC.  5 CFR § 950.102 (c).  The Director renders all final decisions regarding disputes.  The Director establishes and maintains an official list of local CFCs and the geographical areas they cover.  The Director also designates Local Federal Coordinating Committees ("LFCCs") which conduct and supervise the local CFC in particular communities. See 5 CFR § 950.103 (a) and (b); *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988).

     The LFCCs each year establish a 6 week period during which federal employees may be solicited for charitable contributions.   The solicitations may not begin before September 1 and may not extend beyond December 15.  Contributions are made either directly to the CFC or are withheld from participating employees' paychecks.  5 CFR § 950.103.

     Each year, the Director compiles a list of charities eligible to participate nationally in all local campaigns ("National List").  Each LFCC is required to include the National List charities in the CFC brochures prepared and distributed to eligible federal employees in accordance with CFC regulations.  Upon receiving the brochure, federal employees receive a pledge card  and identify  charities they wish to support.  5 CFR §§950.105, 950.201.

     A charitable organization wishing to be included in the CFC applies annually to the Director.  An organization seeking inclusion on the National List, *inter alia*, must certify: a) it provides services or benefits in at least 15 states or a foreign country over the three year period immediately preceding the campaign year involved; and b) it is recognized by the Internal Revenue Service as a tax-exempt organization under section 501(c)(3) of the Internal Revenue

Code of 1986 ("Code").  5 CFR §950.202.[2]

The Director is required to issue the National List to all LFCCs each year. As noted in Exhibit F to the complaint, the Director intends to distribute the National List on or about July 31, 2003 *via* display on the OPM web site.  The web site will contain the names of and information about charities included in the National List.

To the National List, LFCCs are permitted to add local charities, in accord with a local application process. The LFCCs do not have discretion to remove a National List charity from the CFC. The decision by the Director is final as to which charities are admitted to the CFC as National List charities.

Sometime shortly after July 31, 2006, it is anticipated the LFCCs will commence the printing of brochures for distribution to federal employees[3]. These brochures must contain the names of and information about National List charities. (Local charities, *but not National List charities*, will vary from brochure to brochure, depending on the region covered by the local federal campaign.)

---

[2]Section 950.202 states that organizations seeking national list eligibility must "(a) Certify that it [sic] provides or conducts real services, benefits, assistance, or program activities, in 15 or more different states or a foreign country over the 3 year period immediately preceding the start of the year involved. The requirement cannot be met on the sole basis of services provided through an "800" telephone number or by sending materials via the U.S. Postal Service or a combination thereof. A schedule listing those states (minimum 15) or the foreign countries (minimum 1) where the program activities have been provided and a detailed description of the activities in each state or foreign country must be included with the application. While it is not expected that an organization maintain an office in each state or foreign country, a clear showing must be made of the actual services, benefits, assistance or activities provided in each state or foreign country."

[3] The exact printing dates will vary somewhat from one local LFCC to another.

**B. The Michael J. Fox Foundation for Parkinson's Research ("MJFF") and Its Application for Inclusion in the 2006 CFC**

MJFF is a non-profit, charitable corporation exempt from federal income tax as an organization described in Internal Revenue Code sec. 501(c)(3). MJFF provides funding for research to develop a cure and treatment of Parkinson's Disease in the United States.(Complaint, ¶¶ 4, 13).

MJFF is a member of The Health and Medical Research Charities of America ("HMR"), a non-profit, tax-exempt organization. HMR is a national federation, approved by the Office of Personnel Management ("OPM"), to participate in the 2006 CFC on behalf of its member organizations. (Complaint, ¶ 7), See, 5 CFR §950.301 *et seq.* On or about January 27, 2006, in advance of the 2006 CFC application deadline, HMR submitted its list of eligible member organizations certified for participation in the 2006 CFC. MJFF was included in the list and authorized HMR to represent it before OPM in connection with the 2006 CFC. (Complaint, ¶ 11)[4] HMR basically reviews applications and determines whether the charities are eligible for the CFC for OPM. The OPM usually requests a random selection of applications to review after HMR makes its determination.

On February 10, 2006, in response to a request from defendant, HMR submitted a copy of MJFF's 2006 CFC application on the required OPM form, to which was appended MJFF's Attachment A (as well as miscellaneous other attachments not at issue in this action) that described MJFF's services and benefits undertaken throughout the United States.

---

[4]Approved national federations such as HMR, eligible to participate in the CFC on behalf of their member organizations, submit annually to OPM lists of their members eligible to participate in a particular CFC. The individual members do not submit formal applications to participate in the particular CFC unless OPM so requests.

MJFF identified medical researchers working on Parkinson's disease to whom it provided funding from 2002-2005. The law requires that the charitable organization provides services or benefits in at least 15 states or a foreign country over the three year period immediately preceding the campaign year involved. 5 CFR §950.202. In this case, the three year period would be from 2003-2005. In its application, MJFF listed funding provided over the period from 2002-2005 in 16 states, thus including an extra year of funding. All 16 states were listed in Attachment A. (Complaint, ¶¶ 12-13).

On April 24, 2006, the defendant denied MJFF's application asserting MJFF did not provide insufficient information to support its claim it provided services in fifteen or more states. MJFF's application was criticized for including grants from 2002 in its list. (Complaint, ¶ 14). HMR, on behalf of MJFF, appealed this determination on May 3, 2006. HMR contended that a complete reading of the application would demonstrate that the medical researchers who received grants in 2002 also received funding in later years, therefore satisfying the requirement that funding take place during the three year period preceding 2006. The appeal also pointed out that OMB's decision was inconsistent and arbitrary because another organization that provided similar data (services beginning in 2002 and continuing in 2003-2004) was approved for inclusion on the CFC.

On July 17, 2006, the Defendant denied MJFF's appeal for inclusion in the 2006 CFC, stating, in pertinent part:

> The Michael J. Fox Foundation is denied because the level of service in a number of states is insufficient to satisfy eligibility criteria. The award of a grant in 2002 is a service outside the scope of the three year period. The fact that multiple payments are made with respect to that grant in years subsequent to 2002 does not qualify each of the multiple payments as an independent service, as the award had already been made. Thus, service in Alabama and Georgia are not considered states in which the applicant has

demonstrated service sufficient to satisfy national eligibility criteria. Moreover, regarding a variety of states in which a single grant was provided, the organization was viewed as providing an insufficient level of service to satisfy eligibility criteria.

The denial is final for administrative purposes for the 2006 CFC.[5] (Complaint, ¶ 17).

## II. MJFF IS ENTITLED TO INJUNCTIVE RELIEF

### A. Standards For Granting Preliminary Injunctive Relief

MJFF is entitled to preliminary injunctive relief if it demonstrates (i) a substantial likelihood of success on the merits; (ii) a substantial threat of irreparable injury if the requested relief is not granted; (iii) no other parties will be harmed if temporary relief is granted; and (iv) issuance of the injunction will serve the public interest. *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F. 2d 921, 925 (D.C.Cir. 1958); *Washington Metropolitan Area Transit Comm'n v. Holiday Tours*, 559 F. 2d 841, 843 (D.C. Cir. 1977); *Serono Laboratories, Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1998).

MJFF is not required to prevail on each of these factors. Under *Holiday Tours*, these factors must be viewed as a continuum, with the presence of more than one factor compensating for less of another. "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Cityfed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). A court may issue an injunction "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *Id.* Thus, preliminary injunctive relief may issue "with either a high probability of success and some injury or vice versa." *Cuomo v. United States Nuclear*

[5] 5 CFR §§ 950.102(c) and 950.205(f) state "[t]he Director's decision is final for administrative purposes."

*Regulatory Commission*, 772 F. 2d 972, 974 (D.C. Cir. 1985).

**B. There Is A Substantial Likelihood MJFF Will Prevail On The Merits**

In this action, MJFF appeals from an informal agency adjudication reviewable under §706 of the Administrative Procedure Act ("APA"), 5 U.S.C. §706.

Pursuant to §706 of the APA, informal agency action must be set aside "if it fails to meet statutory, procedural or constitutional requirements or if it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...' " 5 U.S.C. § 706(2)(A); *Olenhouse v. Commodity Credit Corporation*, 42 F. 3d 1560 (10th Cir. 1994) quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413-14 (1971). A reviewing court, in applying the "arbitrary or capricious" standard, asks whether the agency engaged in reasoned decision making. *Clifton Power Corp. v. F.E.R.C.*, 88 F.3d 1258 (D.C. Cir. 1996); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

1. <u>Defendant's Denial of MJFF's Application Abridges Its First Amendment Rights</u>

Charitable solicitation of federal employees through participation in the CFC is protected by the First Amendment. *Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788 (1985).

> The brief statements in the CFC literature directly advance the speaker's interest in informing readers about its existence and goals. Moreover, an employee's contribution in response to a request for funds functions as a general expression of support for the recipient and its views...[T]he CFC literature facilitates the dissemination of views and ideas by directing employees to the soliciting agency to obtain more extensive information...Finally, without the funds obtained from solicitation in various fora, the organization's continuing ability to communicate its ideas and goals may be jeopardized....Thus, the nexus between solicitation and the communication of information and advocacy of causes is present in the CFC as in other contexts.
>
> *Id.* at 3447.

In *NAACP Legal Defense and Educational Fund, Inc. v. Campbell*, 504 F. Supp. 1365 (1981), two charities challenged their exclusion from the CFC. The Manual on Fund-Raising Within the Federal Service for Voluntary Health and Welfare Agencies ("Manual")[6] stated that "[o]nly nonprofit, tax-exempt charitable organizations, supported by voluntary contributions from the general public and providing direct services to persons in the fields of health and welfare services are eligible for approval."

Defendant contended the charities were not eligible to participate in the CFC because they served as legal advocates for groups but did not provide "direct services" to persons such as providing legal representation for individuals unable to afford the cost of retaining private attorneys.

The court found that the "direct services" requirement did not meet First Amendment standards. The term was not defined "and the term [direct services] standing alone, is too vague to comport with the strict standards of specificity required when limits are placed on First Amendment activity." *Id.* at 1367. No established standards existed that would guide the government in determining whether an organization provided "direct services." The "direct services" requirement did not have "the precision necessary to comport with constitutional requirements." *Id* at 1368.

Similarly, the requirement that eligible CFC National List participants must demonstrate they provide services in the "three year period" preceding the fundraising year and "real services... in 15 or more states" are similarly vague because the terms "three year" services and "real services... in 15 or more states" are not defined in the regulations. Nowhere do the

---

[6]The Manual predated the current CFC regulations found at 5 CFR Part 950.

regulations state that the services provided in the three year period must be new activities such as grants to medical researchers who have never previously received grants.[7] What level of service constitutes "real services... in 15 or more states" is vague, imprecise and capable of subjective determination without the necessary specificity to permit applicants to conform their conduct to clear standards.

MJFF listed in Attachment A to its 2006 CFC application the states in which it provided funding and the amount of funding. MJFF provided detailed information as to these finances. Yet, defendant arbitrarily determined that MJFF's detailed description of its activities was insufficient because MJFF failed to "demonstrate service sufficient to satisfy national eligibility criteria" and in "a variety of states... a single grant was provided." (Exhibit E to the Complaint). Counting the number of grants does not take in to account the size of the grant. Moreover, the regulation states that a showing must be made of actual services, yet it does not include any requirement of a minimum amount of services or benefits that must be provided to each of the individual states. See 5 C.F.R. §950.202. Because the regulations are vague as to what qualifies as "real" services "during the three year period" and what constitutes "real" services to fifteen or more states, the regulations the defendant relied upon violate the First Amendment.

2. <u>Defendant's Denial of MJFF's 2006 CFC Application Was Arbitrary and Capricious</u>

Under the "arbitrary or capricious" standard, the court reviews an agency's decision making process and determines whether the agency examined "the relevant data and articulate[d]

---

[7] OPM stated: "The fact that multiple payments are made with respect to that grant in years subsequent to 2002 does not qualify each of the multiple payment as an independent service as the award had already been made." OPM improperly assumed these grants were continuing grants for three or four years. OPM failed to consider these grants just as likely were annual grants that had to renewed annually.

a satisfactory explanation for its action *including a rational connection between the facts found and the choice made.*" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (emphasis added.); *Touris Records, Inc. v. Drug Enforcement Administration*, 259 F.3d 731 (D.C. Cir. 2001). Agency action will be set aside "if the agency relied on factors which Congress has not intended for it to consider, entirely failed to consider an important aspect of the problem, *offered an explanation for its decision that runs counter to the evidence before the agency,* or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Manufacturers,* 463 U.S. at 43 (emphasis added).

The grounds upon which the agency made its decision must be clearly articulated and a reasoned explanation for its action must appear in the record. "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Id.* at 50. The court is required to conduct a plenary review of the record to ascertain whether the agency's action is sustained by the record and supported by "substantial evidence." *Association of Data Processing v. Board of Governors,* 745 F. 2d 677, 683-84 (D.C. Cir. 1984). The agency's decision, therefore, must be supported by facts found in the record.

> When the arbitrary or capricious standard is performing that function of assuring factual support, there is no *substantive* difference between what it requires and what would be required by the substantial evidence test [applicable to formal adjudication under §706(2)(E)], since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense.

*Id.* at 683. (emphasis in original.)

The Director has acted without authority and in an arbitrary and capricious manner in rejecting MJFF's application for inclusion in the 2006 CFC. In his July 17, 2006 letter, the Deputy Director rejected MJFF's 2006 CFC application stating:

> The Michael J. Fox Foundation is denied because the level of service in a number of states is insufficient to satisfy eligibility criteria. The award of a grant in 2002 is a service outside the scope of the three year period. The fact that multiple payments are made with respect to that grant in years subsequent to 2002 does not qualify each of the multiple payments as an independent service, as the award had already been made. Thus, service in Alabama and Georgia are not considered states in which the applicant has demonstrated service sufficient to satisfy national eligibility criteria. Moreover, regarding a variety of states in which a single grant was provided, the organization was viewed as providing an insufficient level of service to satisfy eligibility criteria.

Exhibit E to the Complaint.

In CFC Memorandum 2003-9, subparagraph (2), OPM set forth the following example of an acceptable statement in a CFC application for an organization which provides scholarships:

"ABC Charity provides educational tools to inner-city schoolchildren whose families are below the poverty line. $5,000 educational scholarships for tuition at two or four year colleges are awarded to recipients who meet the eligibility criteria (3.0 grade point average, involvement in extra-curricular activities, 500 word essay, etc.). Following is a listing of the students who have received ABC scholarships in 2000-2002....A. Johnson – Miami, FL; C. Smith – Seattle, WA; J. Andrews – Los Angeles, CA; and J. Callahan – Philadelphia, PA."

In CFC Memorandum 2004-10, OPM states in regard to scholarships and fellowship awards: "Organizations that issue student scholarships or sponsor fellowships/mentorships *must indicate the state in which the recipients reside, not the state where the school or mentor is located*." (Emphasis added.)

MJFF's Attachment A submitted in support of its application to be included in the 2006 CFC is a chart that sets forth the name of the recipients of grants to conduct research in regard to Parkinson's Disease, the state where they reside, the amount of the payment, and the date of the payment. Grants to carry out scientific research functionally are no different than providing

scholarship to worthy students.

MJFF provided extensive and detailed information about its activities to defendant in its 2006 CFC application. MJFF demonstrated that it provided funding in sixteen states during the period from 2003-2005. (See Exhibit A to the Complaint). The defendant found that MJFF did not provide timely funding to Alabama and Georgia, two of the sixteen states listed by MJFF. The documents submitted and summarized below demonstrate grants of MJFF of $108,894.75 to researchers in Alabama from 2003-2005 and $160,821.75 to researchers in Georgia from 2003-2005. (Complaint, ¶ 18).

A summary of the recipients of the grants, the date the grants were made, the states where the recipients reside and the total amount of grants per state are set forth below:

| **Recipients** | **Date** | **State** | **Grant Amounts** |
|---|---|---|---|
| Guy Caldwell | 7/03, 1/04, 7/04 | Alabama | $108,894.75 |
| Michael Sierks<br>Jeffrey Joyce<br>Lih-Fen Lue | 1/03 - 12/04 | Arizona | 655,337.50 |
| Seung-Jae Lee<br>Sheng Ding<br>Mryka Quik<br>William Melenga<br>Lorene Nelson<br>Caroline Tanne<br>David Cox<br>Fred Gage | 1/03-12/04 | California | 4,330,496.50 |
| Kimberly Bjugstad | 12/03, 6/04 | Colorado | 115,762.00 |
| Gene Redmond | | | |

| | | | |
|---|---|---|---|
| Daniel Chase | 6/03-6/04 | Connecticut | 1,095,326.00 |
| Matt Farrer<br>Leonardo Petrucelli<br>Richard Voellmy<br>Michael Okun | 2/03-10/04 | Florida | 763,055.00 |
| Dieter Jaegar | 6/03-6/04 | Georgia | 160,821.75 |
| Xiaoxi Zhuang<br>Paul M. Carvey<br>Kathy Steece-Collier<br>Jeff Kordower | 6/03-12/04 | Illinois | 960,903.80 |
| Tatiana Foroud | 4/04,10/04 | Indiana | 79,393.00 |
| Ole Isacson<br>Michael Schlossmacher<br>Michael Schwarzschild<br>Dong-Youn Hwang<br>Clemens Scherzer<br>Steven Gullans<br>Alberto Ascherio | 6/03-12/04 | Massachusetts | 920,073.50 |
| Tomas Guilarte<br>Ted Dawson<br>Ron McKay | 1/03-12/04 | Maryland | 976,561.50 |
| David Loeffler<br>Matthew Galloway<br>Peter Lew Witt | 6/03-12/03 | Michigan | 112,500.00 |
| Rolf Gruetter<br>Demetrius Maraganore | 7/03-10/04 | Minnesota | 275,000.00 |
| Kalipada Pahan | 12/03-12/04 | Nebraska | 93,750.00 |
| Renping Zhou<br>Gail Zeevalk<br>Ira Black | 1/03-12/04 | New Jersey | 1,000,000.00 |
| Flint Beal<br>Peter Werner | | | |

| Richard Davis | 6/03-12/04 | New York | 687,442.00 |
|---|---|---|---|

Thus, the Fox Foundation made grants for scientific research to individuals residing in 16 different states. Therefore, defendant's rationale for denying MJFF's application, *viz.*, that MJFF failed to be a sufficiently national charity, inexplicably ignores the detailed description of activities provided in MJFF's Attachment A. (Exhibit A to the Complaint).

Moreover, in connection with its 2006 CFC application Loma Linda University Medical Center ("LLUMC") submitted as Attachment A a document substantially similar to the documentation submitted by MJFF, but LLUMC's application was granted. (See Complaint, ¶¶ 16, 22, and Exhibit D to the Complaint.) In each state listed on the LLUMC application, services began in 2002 and continued in 2003-2004. Based on this submission, Defendant approved LLUMC's 2006 CFC application.

Similarly, the MJFF application listed funding that began in 2002 with additional funding in subsequent years. Yet, Defendant inexplicably denied MJFF's 2006 CFC application which contained substantially similar information as the LLUMC application approved by Defendant.

Defendant's decision, therefore, was arbitrary and capricious. MJFF submits there is a substantial likelihood it will prevail on the merits.

**C. MJFF Will Suffer Irreparable Injury If Preliminary Injunctive Relief Is Not Granted**

The Director will distribute the National List to LFCCs on or about July 31, 2006. See, CFC schedule attached as Exhibit F to the complaint. The issuance date of the National List for the 2006 CFC is imminent.

The LFCCs publish this list in a brochure which identifies participating nationally eligible charities and includes a short description of their programs and purposes. The brochures

provide essential information relied upon by federal employees in deciding which charities to support through direct contributions and payroll deductions.

Exclusion of MJFF from the National List for the 2006 CFC will inflict substantial economic harm and other injuries which cannot be rectified for several reasons. MJFF will be deprived of the exercise of its First Amendment right to communicate its message to millions of federal employees who otherwise would not have the opportunity to receive this information. Not coincidentally, MJFF also will be precluded from seeking financial support for its cause during the 2006 CFC. The CFC is the exclusive means whereby federal employees may be solicited for charitable contributions in the workplace. See, e.g., *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988) (injunction was issued preventing enforcement of OPM regulation preventing a national organization and one of its affiliates from simultaneously appearing on the list of eligible organizations distributed to federal employees in their local CFCs). Moreover, given the large number of federal employees located in every state and abroad, MJFF cannot solicit contributions directly from this same audience without incurring exorbitant costs.

Finally, MJFF cannot recover from the government the amount of contributions it will not receive as a result of the Defendant's action. In addition to the loss being difficult if not impossible to quantify, MJFF has no remedy at law as the result of the federal government's immunity from damages for these types of suits. See, e.g., *Woerner v. United States Small Business Administration*, 739 F. Supp. 641 (D.D.C. 1990).

The losses described herein are real, immediate and irremediable absent preliminary injunctive relief.

**D. Third Parties Will Not Suffer Harm If Preliminary Injunctive Relief Is Granted**

No other parties will suffer harm if the relief requested by MJFF is granted. The list of national organizations eligible to participate in the CFC easily can be updated and revised by the Director to include MJFF and be distributed to the local LFCCs *via* OPM's web site. The brochures have yet to be printed and distributed, so no additional expenses for reprinting the brochures need be incurred. Moreover, other eligible charitable organizations participating in the CFC will not be harmed because the 2006 CFC has yet to begun. For these reasons, no harm will occur to other parties if preliminary injunctive relief is granted.

**E. Grant of Preliminary Injunctive Relief Will Serve The Public Interest**

The public interest is undoubtedly served by MJFF's participation in the CFC. Inclusion of MJFF in the 2006 CFC permits millions of federal employees to learn of the organization, to receive its message, and to make donations to permit the organization to continue to carry out its charitable medical research activities. If the requested preliminary injunctive relief is granted, MJFF's participation in the CFC will guarantee that MJFF may continue to provide funding for research into developing treatments for and a cure of Parkinson's disease.

Moreover, "there is a strong public interest in meticulous compliance with law by public officials." *Fund for Animals v. Espy*, 814 F. Supp. 142, 152 (D.D.C. 1993). In the instant action, the Defendant's arbitrary denial of MJFF's application was based on vague and imprecise standards and on reasons not supported by the record.

Therefore, the public interest will be served by granting the requested preliminary injunctive relief.

**III. CONCLUSION**

For the reasons stated herein, MJFF respectfully requests this court to order the requested preliminary injunctive relief.

Respectfully submitted,

/s/______________________________________

Bernard J. DiMuro, Esq. (DC Bar #393020)
DiMuroGinsberg, P.C.
908 King Street, Suite 200
Alexandria, Virginia 22314
(703) 684-4333
(703) 548-3181 (facsimile)

Noland MacKenzie Canter, III (D.C. Bar #93616)
Mark J. Diskin (D.C. Bar #334086)
Copilevitz & Canter, LLC
1900 L Street, N.W., Suite 215
Washington, D.C. 20036

*Counsel for Plaintiff*